UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                            :

NORTH AMERICAN FOREIGN
TRADING CORP.,                         :

            Plaintiff,          :       **MEMORANDUM AND ORDER**

        -against-          :       05 Civ. 5827 (SAS)(KNF)

MITSUI SUMITOMO INSURANCE    :
USA, INC., ET AL.,

                                    :
            Defendants.
------------------------------------------------------X
                                              :

NORTH AMERICAN FOREIGN
TRADING CORP.,                         :

            Plaintiff,          :       05 Civ. 4807 (SAS)(KNF)

        -against-          :

MITSUI SUMITOMO INSURANCE    :
USA, INC., ET AL.,

                                    :
            Defendants.
------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

     In these actions for breach of a marine insurance contract, brought under the court's

admiralty jurisdiction by North American Foreign Trading Corp. ("NAFT") against Mitsui

Sumimoto Insurance USA, Inc. et al. ("Mitsui"), the plaintiff seeks an order from the Court

directing the defendants to disclose an insurance coverage opinion letter prepared by Mitsui's

outside counsel.  Mitsui considered the letter as it determined whether to deny NAFT's claim for

a loss it suffered at a warehouse located in Lionda, China.  Mitsui opposes the plaintiff's request.

Mitsui maintains the letter its counsel prepared is shielded from disclosure by virtue of the attorney-client communication privilege.

In July 2006, Mitsui made a motion for summary judgment in the action bearing docket number 05 Civ. 04807.  After NAFT responded to the motion, Mitsui submitted a reply that included an affidavit by its claims adjuster, Marvin J. Margolies ("Margolies"), asserting that Mitsui did not make a coverage decision until he received written advice on the issue of coverage, along with a proposed coverage declination letter, from Mitsui's outside counsel. Margolies noted, in his affidavit, that the advice received from counsel could not be given to Mitsui until after a forensic accountant's report he commissioned, to ascertain fully the facts and circumstances of the claimed loss, was issued.  According to Margolies, after he received the documents from the accountant and the attorney, and reviewed them, he recommended to his supervisors that NAFT's claim be denied.

NAFT contends Margolies' claim, that his coverage recommendation was based upon the advice he received from Mitsui's counsel, placed that attorney's advice in issue and, concomitantly, waived the attorney-client communication privilege, which, ordinarily, would shield that advice from disclosure.  For its part, Mitsui maintains Margolies' reference, in his affidavit, to the advice Mitsui's counsel provided to him did not place that advice in issue, since the affidavit did no more than describe, in a sequential way, the claims-handling procedure employed at Mitsui when a significant claim for insurance  coverage is received from one of its policy holders.  Mitsui alleges that Margolies' affidavit had to indicate the involvement of Mitsui's outside counsel, because enlisting the aid of outside counsel is one of the procedural steps routinely followed by a Mitsui claims handler when analyzing a significant claim for

insurance coverage.  Therefore, according to Mitsui, the attorney-client communication privilege, that NAFT alleges has been waived, remains intact.

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications."  Swidler & Berlin v. United States, 524 U.S. 399, 403, 118 S. Ct. 2081, 2084 (1998).  It protects from disclosure, unless waived, communications, between a client and his attorney, made in confidence, for the purpose of obtaining legal advice.  See, e.g., Upjohn Co. v. United States, 449 U.S. 383, 101 S. Ct. 677 (1981).  The attorney-client privilege may be waived where a litigant has placed advice received from an attorney 'at issue' in a litigation.  See Am. S.S. Owners Mut. Prot. & Indem. v. Alcoa S.S. Co., Inc., 232 F.R.D. 191, 198 (S.D.N.Y. 2005).

In determining whether "at issue waiver" has occurred, courts in the Second Circuit typically consider whether: 1) the assertion of the privilege came about as a result of some affirmative act by the asserting party; 2) the affirmative act of the asserting party placed the protected information at issue, by making it relevant to the case; and 3) the application of the privilege, in the circumstances of the particular case, would deny the adversary access to information that might disprove or undermine the asserting party's contentions.  See Weizmann Inst. of Sci. v. Neschis, No. 00 Civ. 7850, 2004 WL 540480, at *4 (S.D.N.Y. Mar. 17, 2004).

In the case at bar, the coverage opinion letter Mitsui's counsel provided to Margolies is within the  attorney-client communication privilege.  Mitsui asserted the privilege affirmatively in opposing NAFT's demand that the letter be disclosed, after it was mentioned in a submission supporting a dispositive motion.  As noted above, Mitsui contends Margolies referenced the opinion letter he received from counsel "merely [] to explain [Mitsui's] claims-handling procedure."  Moreover, according to Mitsui, "[t]he fact that the declination letter was based in

3

part on that coverage opinion does not mean that the content of the opinion is now placed at issue and therefore subject to disclosure."

The Court disagrees.  If Margolies' aim was solely to state, through his affidavit, that soliciting and receiving advice on coverage from Mitsui's outside counsel was just one of several steps he was required to employ in the ordinary course of following Mitsui's claim-handling procedure, he could have done that and nothing more.  However, he went further.  Margolies disclosed: (a) the essence of the attorney's advice, *to wit*, that Mitsui should decline NAFT's claim for coverage; and (b) that counsel proposed text for a declination letter.

In addition, Margolies revealed that his recommendation, that Mitsui decline to cover NAFT's claim, was not the result of any independent analysis and decision making on his part after receiving advice from counsel.  Rather, counsel's advice was the only factor that informed Margolies' recommendation.  This is clear because Margolies admitted in his affidavit, that he would have followed whatever advice Mitsui's counsel provided, thereby confirming the lack of any independent decision making on his part.

 By revealing the essence of the opinion letter and placing the letter in issue, Mitsui waived the attorney-client communication privilege that would typically shield that document from disclosure.  Under the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26 (b) (1).  Therefore, since the Court finds that the attorney-client communication

privilege was waived by Mitsui, it must disclose the opinion letter its counsel provided to

Margolies that is referenced in his affidavit.

Dated: New York, New York
     October 16, 2006

SO ORDERED:

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE